**STANISZEWSKI v. WATKINS, District Director of U. S. Immigration, etc.**

United States District Court
S. D. New York.
May 12, 1948.

George C. Dix, of New York City, assigned counsel for petitioner.

John F. X. McGohey, U. S. Atty., of New York City (William J. Sexton, Asst. U. S. Atty., of New York City, of counsel), for respondent.

Kirlin, Campbell, Hickox & Keating, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for United States Lines Co.

LEIBELL, District Judge.

Petitioner was ordered excluded as an inadmissible alien under an order of the Commissioner of Immigration and Naturalization which was based upon a report of a Special Board of Inquiry dated October 24, 1947, and was affirmed on appeal to the Board of Immigration Appeals December 3, 1947. He applied for and obtained a writ of habeas corpus on March 20, 1948, to review the cause of his detention on Ellis Island by the respondent herein. The respondent has filed a return to the writ and at the hearing on the writ submitted a certified copy of all the orders and evidence in the exclusion proceedings.

The following paragraphs are quoted from the opinion on which the exclusion decision of the Board of Special Inquiry was affirmed by the Acting Commissioner.

The pertinent conclusions of law of the Board of Special Inquiry, as amended by the Commissioner on appeal, are:

"(1) That under Section 13(a) (1) of the Immigration Act of 1924 [8 U.S.C.A. § 213(a) (1)], you are inadmissible to the United States in that you are an immigrant not in possession of an immigration visa and not exempted from the presentation thereof by the said Act or regulations made thereunder;"

"(2) That under the Passport Act approved May 22, 1918, as amended [22 U.S.C.A. § 223 et seq.], and the Act of February 5, 1917 [8 U.S.C.A. § 101 et seq.], the appellant is inadmissible to the United States in that he does not present an unexpired passport or official document in the nature of a passport issued by the government of the country to which he owes allegiance or other travel document showing his origin and identity, as required by Executive Order No. 8766;

"(3) That under Section 3 of the Immigration Act of February 5, 1917 [8 U.S.C. A. § 136], the appellant is inadmissible to the United States in that:

"(a) he has been convicted of a crime involving moral turpitude, to wit: Perjury;

"(b) he admits the commission of a crime involving moral turpitude, to wit: Perjury;

"(4) That under Section 1(a) of the Act approved March 4, 1929 [8 U.S.C. A. § 180], you are inadmissible to the United States on the ground that you are an alien who had been arrested and deported in pursuance of law and to whom the proper authority had not granted permission to reapply for admission."

The manager of the Unlicensed Personnel Department of the United States Lines Company has submitted an affidavit "amicus curiae" from which I quote the following:

"3. On or about April 23, 1947 the petitioner herein became a member of the crew of the SS. JOHN J. CRITTENDEN at Norfolk, Virginia, for a voyage to Bordeaux, France, and return to the United States under articles by which he was entitled to be paid off at the end of the voyage. The petitioner served above said vessel as a seaman until on or about June 4, 1947, when he was granted shore leave by the Immigration Service and was paid off and discharged from that vessel.

"4. On or about July 14, 1947 the petitioner herein became a member of the crew of the SS. CRAWFORD W. LONG at New York, N. Y., for a voyage to one or more Eurpoean ports and return to the United States under articles which provided for his discharge on the termination of the voyage. On the return of that voyage at New York he was ordered detained on board by an Immigration Inspector,

whereupon he proceeded aboard the vessel as a seaman to the port of Cherbourg for return to Baltimore, Maryland. On arrival at Baltimore on or about October 10, 1947, he was again ordered detained aboard the vessel by an Immigration Inspector at Baltimore, and being unable to obtain a release from said detention order he was on or about October 15, 1947 removed to the Immigration Station at Ellis Island, New York, for safekeeping, where he has since been detained at the expense of the United States Lines Company at the rate of $3. per day.

"5. On information and belief, the petitioner has claimed a residence in the United States since 1911, pursuing his calling as a seaman. When he became a member of the crew of the vessels heretofore mentioned, he was in the United States and, if his residence therein was in any respect illegal United States Lines Company was not advised of that fact. He was furnished to the United States Lines Company in the regular way by his Union. He had in his possession at all times adequate seaman's papers issued by the United States Coast Guard for service on American ships, and the crew list which contained the name of the petitioner was duly submitted to the Immigration Service prior to departure. He was also signed on as a member of the crew by the United States Shipping Commissioner at New York. The operator of an American vessel has no alternative but to accept seamen designated by an accredited Seamen's Union whose seamen's papers are in order, unless its own records contain information on which it can be established that the tendered seaman is for some reason not a qualified or desirable seaman. The records of the United States Lines Company did not contain anything derogatory to the petition in that respect."

"7. The position of the United States Lines Company is that the Immigration Laws do not contemplate the right of the Immigration Service to effect the deportation of an alien seaman from the United States in the guise of ordering him detained and deported, if he is a bona fide seaman and in possession of appropriate seaman's papers issued by the United States Coast Guard when he is accepted for employment in the United States under articles that provide for a round voyage and return to a port in the United States to be paid off and discharged. If the Immigration Service is permitted to refuse shore leave in such circumstances, the result is that the seaman may in effect be imprisoned for life at the expense of the steamship owner, because except in the rare instance that the vessel might happen to proceed to a country of the seaman's nationality, it probably would be found impossible for him to go ashore and remain in any other country. In the present instance the petitioner has made two round trips without being able to land, and has been held in forcible detention for about 6 months at the expense of the vessel on which he served, without any fault of the vessel or its owners. In many instances the circumstances are even more aggravating."

When the return to the writ of habeas corpus came before this court, I suggested that all interested parties, the petitioner's attorney, the United States Lines and the attorney for the government, make an effort to arrange to have the petitioner ship out to some country that would receive him as a resident. He is a native born Pole but the Polish Consul has advised him in writing that he is no longer a Polish subject. This government does not claim he is a Polish citizen. His attorney says he is stateless. The government is willing that he go back to the ship, but if he were sent back aboard ship and sailed to the port (Cherbourg, France) from which he last sailed to the United States, he would probably be denied permission to land. There is no other country that would take him, without proper documents.

It seems to me that this is a genuine hardship case and that the petitioner should be released from custody on proper terms. He has been sailing on American ships for nearly all of his 38 years at sea. He is now a boatswain. He has been certified many times through proper seamen's documents provided by the American Coast Guard for service on American vessels. He served on American ships in two world wars. True, he was convicted of perjury in 1937 in that he represented him-

self in some documents as an American citizen. But he paid the penalty for that offense, and at the time he may have felt that he had earned the right to claim that he was an American citizen.

Petitioner risked his life by serving on American ships in the second world war, during which he was permitted to land here and have shore leave. On one trip he was on a ship that was torpedoed in the Caribbean and was landed at the Dutch West Indies. He was transported to Miami and permitted to land there, although at that time there was an earlier deportation order still in effect against him.

When he was taken into custody in October 1947, he was practically requested to seek admittance into the United States. That formed the basis for the most recent exclusion proceeding, which resulted in an order of deportation affirmed December 3, 1947.

What is to be done with the petitioner? The government has had him in custody almost seven months and practically admits it has no place to send him out of this country. The steamship company, which employed him as one of a group sent to the ship by the Union, with proper seaman's papers issued by the United States Coast Guard, is paying $3.00 a day for petitioner's board at Ellis Island. It is no fault of the steamship company that petitioner is an inadmissible alien as the immigration officials describe him. But I am most concerned with the seemingly helpless status of the petitioner and the failure of the proper officials to find a means of releasing petitioner from confinement at Ellis Island.

I intend to sustain the writ of habeas corpus and order the release of the petitioner on his own recognizance. He will be required to inform the immigration officials at Ellis Island by mail on the 15th of each month, stating where he is employed and where he can be reached by mail. If the government does succeed in arranging for petitioner's deportation to a country that will be ready to receive him as a resident, it may then advise the petitioner to that effect and arrange for his deportation in the manner provided by law.