In re KRAJCIROVIC.

Misc. Civ. No. 7530.

United States District Court
D. Massachusetts.

Dec. 22, 1949.

380

James J. Leibman, New York City, for petitioner.

George F. Garrity, United States Attorney, Boston, Mass., Edward O. Gourdin, Asst. U. S. Atty., Boston, Mass., for respondent.

WYZANSKI, District Judge.

This case involves the power of an official of the Department of Justice to confine for an extended period of time at a port of entry an alien who arrived as a stowaway without a passport, travel documents or an immigration visa.

Krajcirovic was born a Czech citizen in Moravia in 1920. During World War II as a member first of the Czech partisan forces and later of the Czech Army he fought the Germans. For these services the President of Czechoslovakia awarded him a distinguished service cross. After the fighting was over he became a full-time paid secretary of a branch of the National Revolutionists, a patriotic society of war veterans in Czechoslovakia engaged in giving ex-service men and their families assistance in getting food, shelter, clothing and employment.

Following the cessation of hostilities the Communists tried for some time to get control of the National Revolutionists. After the death of Jan Masaryk in March 1948, they succeeded. Without warning, a Communist leader, August Schramm, put Krajcirovic out of office and took over the National Revolutionists. Krajcirovic fled to Regensburg in the American Zone of Occupation in Germany which was his headquarters from March to May 1948. In May or June Krajcirovic and all the other refugees who were at Regensburg were transferred to another camp in the American Zone at Wegscheide near Bad Orb. While in the American Zone Krajcirovic joined an anti-Communist refugee group known as the First Czechoslovakian Brigade of Jan Zizka. From Regensburg and Wegscheide Krajcirovic made three trips as a courier to Czechoslovakia to carry anti-Communist messages.

On one occasion in connection with a plan for creating an anti-Communist uprising in Czechoslovakia he carried orders from his superior Captain Starik, formerly of the Czech Army, directing one Choc to shoot Schramm. Upon receipt of the orders, Choc did kill Schramm on May 27, 1948. Choc appears to have been apprehended but Krajcirovic returned to Germany. In June 1948 the refugees at Wegscheide were transferred to Jagerhof Kasarne camp operated by the I.R.O. at Ludwigsberg in the American Zone. From there about September 20 Krajcirovic went to France without the permission of the French authorities. He was at first in a refugee camp at Noisy le Sec, but by December 1948 he had gone to Paris and in May 1949 he was at Le Havre. While in France Krajcirovic saw a Prague newspaper dated November 25, 1948 which reported that he and others had been sentenced to death in absentia for the murder of Schramm and for military betrayal.

Determined to seek a haven in the United States but unable to get an American visa because the Czech quota was full for several years, Krajcirovic, without being observed and without being in possession of an immigration visa or a passport or other travel documents but with the permission of the French authorities to leave France for the United States, stowed away on the S.S. American Flyer bound from Le Havre for Boston. Famished after several days at sea, he came on deck and was discovered.

When the vessel arrived in Boston May 21, 1949, the captain turned Krajcirovic over to the immigration authorities. The Board of Special Inquiry on May 23, 1949, after conducting a hearing, excluded Krajcirovic from admission to the United States on three grounds: first because he was not

in possession of an unexpired consular visa as required by Section 13(a) (1) of the Immigration Act of 1924, 8 U.S.C.A. § 213 (a) (1); second, because he was not in possession of an unexpired passport, a document in the nature of a passport or travel documents showing identity as required by the Passport Act of May 22, 1918 as amended, 22 U.S.C.A. § 223 et seq., and the Act of February 5, 1917, 39 Stat. 874, and Executive Order No. 8766, June 3, 1941; and third, because he was a stowaway who came in violation of Section 3 of the Immigration Act of 1917, 8 U.S.C.A. § 136.

June 1, 1949 Krajcirovic's attorney took exceptions to the findings and conclusions of the Board of Special Inquiry. The Chief Examiner of the Immigration and Naturalization Service in Washington on June 23 heard argument and on July 5 recommended that the Board of Special Inquiry's excluding decision be affirmed but that the alien be permitted to depart voluntarily at his own expense. The Assistant Commissioner of Immigration and Naturalization in charge of the Adjudication's Division, apparently on July 5, approved this recommendation. Krajcirovic's counsel appealed to the Board of Immigration Appeals. The Board on August 3, heard counsel and on August 26 dismissed the appeal and continued the permission for voluntary departure. In the meantime, on August 16 Congressman Lichtenwalter, apparently acting on Krajcirovic's behalf, introduced into the 81st Congress H.R. 6018, a bill which directs the Attorney General to cancel the warrants for the deportation of Krajcirovic and another alien and gives to both the status of persons lawfully admitted to the United States for permanent residence. September 15 the Acting Assistant Commissioner in charge of the enforcement division advised Congressman Lichtenwalter that a stay of deportation would be authorized pending action on the bill. October 5 Krajcirovic's counsel asked the Commissioner to release the alien on a $500 bond. An Assistant Commissioner on October 13 declined to take such action.

December 12, Frank Krajchir, Krajcirovic's uncle, filed in this Court a petition praying for a writ of habeas corpus addressed to the District Director of Immigration and Naturalization directing him to produce Krajcirovic before this Court to show cause why the alien should not be released on bail. The same day this Court issued the writ returnable December 19. On that day the Director brought Krajcirovic before the Court and stated in a formal answer that "deportation was stayed because of the Introduction of a bill into Congress on behalf of" Krajcirovic. The Court received in evidence the record before the Department of Justice, certain stipulations and the testimony of Krajcirovic. Krajcirovic repeatedly stated that he did not wish to be detained at East Boston until Congress acted on H.R. 6018. He preferred that the Attorney General should at once either deport him or release him on bail, and he was willing to run the grave risk that the Attorney General would choose the first of those courses.

There are two chief questions raised by these facts: is the District Director holding Krajcirovic in custody; if he is, is Krajcirovic entitled to be released either with or without bail.

The District Director contends that Krajcirovic is not confined because the Department of Justice has given him the option to depart voluntarily to any place outside the United States, and the District Director calls attention to the view expressed July 5 by the Chief Examiner that "there is no apparent reason why he [Krajcirovic] could not return to the camp at Noisy le Sec in France".

In my opinion this contention rests on an unsound factual basis. Krajcirovic has not at the present time a passport or a visa for any country. While he is in the East Boston station, he cannot effectively apply for a visa, at least without the cooperation of the Department of Justice. Even with such cooperation there is no showing that any country except possibly the land of his birth, Czechoslovakia, would admit him. If he did return to Czechoslovakia, he would be executed for participation in the political killing of Schramm and "for military betrayal". In short, the option pre-

382

sented by the Department of Justice to Krajcirovic is a Hobson's choice—permission to go home and be executed.

Since as a matter of fact the alternatives given to Krajcirovic are either to remain under detention at East Boston or to return to Czechoslovakia to be shot, it follows as a matter of law that the District Director is holding Krajcirovic in custody. The situation is like the tort doctrine, evolved for false imprisonment cases, that it constitutes confinement if one keeps another in custody but gives him an option to escape at grave bodily peril. Restatement, Torts, § 36 Illustration 3. Cf. Cieplinski v. Severn, 269 Mass. 261, 168 N.E. 722.

It is more difficult to determine whether the confinement of Krajcirovic is authorized by law. Of course, the Department of Justice was authorized to confine him temporarily upon his arrival as a stowaway without a visa or passport. It was also authorized to keep Krajcirovic in custody for a reasonable period of time thereafter while seeking to effectuate his deportation. United States ex rel. Janavaris v. Nicolls, D.C.Mass., 47 F.Supp. 201 and cases cited with approval in United States ex rel. Potash v. District Director, 2d Cir., 169 F.2d 747. Furthermore, it was authorized to keep Krajcirovic at East Boston as long as Krajcirovic consented to remain there. And this last sentence describes what was in fact the situation until the date of the hearing on December 19 in this Court. Up to that time the Department was withholding deportation upon the requests of Krajcirovic's counsel and of the Congressman who had introduced H.R. 6018 in the 81st Congress. Both these persons were acting for Krajcirovic, and the Department was entitled to conclude that Krajcirovic preferred to be detained rather than deported.

However, in open Court on December 19 Krajcirovic, after being repeatedly advised of the risk he was running, stated that he was not willing to be detained at East Boston longer and he desired that the Attorney General should either deport him or release him on bail. Under these new circumstances the District Director no longer holds Krajcirovic with his own consent. The District Director now is remitted to the immigration law as the sole basis for detaining the alien. And under that law he is entitled to hold Krajcirovic only for a reasonable time to effectuate deportation—which in the case at bar seems to me to be no later than two months from now, that is February 23, 1950—unless prior to that date Krajcirovic executes in the presence of a witness a written document requesting that he be detained at East Boston awaiting Congressional action.

This decision corresponds in general tenor with the decision reached in Janavaris. And there is no reason to distinguish the two cases. To be sure, before he was arrested Janavaris had been at large in the United States, whereas Krajcirovic was stopped at the border. But neither Janavaris nor Krajcirovic had complied with the visa or other requirements of the 1924 Immigration Act. The enlargement of either by a court permits an alien to be at large in the United States without complying with the immigration laws. But for a court to refuse to enlarge an alien who is being held by the immigration authorities without his consent, without statutory authority and for some purpose other than reasonably prompt deportation would be to deny him a fundamental constitutional right. For wherever the Constitution of the United States is applicable, and that includes ports of entry, an alien as well as a citizen is guaranteed that he will not be deprived of his liberty without due process of law.

Ordered that Krajcirovic be remanded to the custody of the District Director, without prejudice to the filing of a new petition for a writ of habeas corpus on or after February 23, 1950, if prior to that date Krajcirovic has not consented to be detained at East Boston or if Krajcirovic has not been deported or released on bail. The present writ of habeas corpus is dismissed.