UNITED STATES ex rel. MEZEI v. SHAUGHNESSY, District Director, Immigration and Naturalization Service.

United States District Court
S. D. New York.
Nov. 9, 1951.

Jack Wasserman, Washington, D. C., for relator.

Myles J. Lane, U. S. Atty., for the Southern District of New York, New York City (William J. Sexton, Asst. U. S. Atty., New York City, of counsel), for respondent.

IRVING R. KAUFMAN, District Judge.

Mezei was excluded from the United States for undisclosed security reasons on February 9, 1950. He has been detained at Ellis Island for 21 months while the government has failed in efforts to deport him. No foreign government has shown a willingness to allow his entry. He now seeks a writ of habeas corpus, claiming that he has been detained an unreasonable period of time.

The case presents the vexatious problem of what to do with an alien who has no place to go.

There is a certain vagueness about Mezei's history. His parents were either Hungarian or Roumanian—this is in doubt —but he claims that he was born on Gibraltar and is therefore a British citizen. He came to the United States in 1923 and remained here until 1948. The government alleges that he was never lawfully admitted to the United States for permanent residence but this objection seems meaningless now since it is obvious that the government took no action against him in that earlier residence period. He is married to an American citizen, and during World War II he participated in various patriotic activities which he describes generally as work for the Coast Guard, air-raid warden, blood donor, and selling United States war bonds, though he does not indicate with what vigor he pursued these endeavors. Without much doubt his conduct as a resident alien between 1923 and 1948 was unexceptionable. On May 17, 1948 Mezei went to Europe to see his dying mother, who, he says, lived in Roumania. He reached Hungary, but claims he was unable to gain admittance to Roumania, and returned to the United States in February 1950 after experiencing difficulty in gaining exit from Hungary. On February 9, 1950 he was transferred from the French liner Ile de France to Ellis Island on a temporary exclusion order under 8 Code of Federal Regulations 175.-57.[1] The Attorney General entered a per-

---

1. § 175.57 "(a) Any alien * * * may be excluded temporarily if at the time he applies for admission at a port of entry it appears that he is or may be excludable under one of the categories set forth in § 175.53. The official excluding the alien shall immediately report the facts to the head of his department, who will communicate such report to the Secretary of State. Any alien so temporarily excluded by an official of the Department of Justice shall not be admitted and shall be excluded and deported unless the Attorney General, after consultation with the Secretary of State, is satisfied that the admission of the alien would not be prejudicial to the interests of the United States. Any alien so temporarily excluded by any other official shall not be admitted and

manent exclusion order on May 10, 1950 without hearing. Thereafter, until this time, the government has made fruitless efforts to deport Mezei. Twice he was turned over to the French Line for return to France. Each time France refused to accept him. Except for those periods of transit—in July 1950 and November 1950 —he has been detained at Ellis Island, an elapsed period of almost 21 months. Mezei has brought four earlier writs in this case. Each one was denied, apparently upon advice from the government that it was prepared to effectuate his deportation. At this time the government substantially admits an inability to deport Mezei. England rejects his claimed citizenship and refuses him entry. France, as noted, twice has denied him. The State Department has been negotiating for many months with Hungary for his readmission, but Hungarian sources remain mute. Even were Hungary to admit Mezei, there is considerable question whether he may properly be deported there. Mezei himself has sought entry to at least a dozen countries, but without success. The man apparently has no place to go. Is the government justified in keeping him at Ellis Island, perhaps indefinitely?

Mezei does not contest the government's right to exclude an alien without a hearing where a finding is made that a public hearing would lead to disclosure of confidential information prejudicial to the best interests of the United States. He contends, however, that disclosure of the reasons for his exclusion would not be prejudicial and his present detention without a hearing is illegal. The exclusionary power of the Attorney General was settled by the Supreme Court in U. S. ex. rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 70 S.Ct. 309, 94 L. Ed. 317 where it was held beyond the prov-

ince of any court, absent express authority in law, to review the determination of the political branch of the government to exclude an alien. This was applied particularly to the case of an alien excluded without a hearing because the Attorney General deemed the disclosure of information on which he based his opinion dangerous to public security. The rule is clearly a harsh one. It is predicated upon the belief that exclusion is purely a political act, performed by the executive or upon his delegated authority. The court has no function in our system of separated powers to challenge such an act. Mezei, understandably, would wish to have the facts of his exclusion brought out in open hearing. Under the Knauff decision this court has no power to award such a hearing. That is a discretionary power of the Attorney General.

▮ The District Court has the power to release an alien from custody who has been detained an unreasonably long time where his deportation cannot be effectuated. U. S. ex rel. Chu Leung v. Shaughnessy, D.C.S.D.N.Y.1950, 88 F.Supp. 91; In re Krajcirovic, D.C.Mass.1949, 87 F.Supp. 379; Staniszewski v. Watkins, D.C.S.D.N.Y.1948, 80 F.Supp. 132; U. S. ex rel. Janavaris v. Nicolls, D.C.Mass.1942, 47 F.Supp. 201. The government grudgingly admits that this may stand as an abstract principle of law but denies its relevance here on two grounds. (1) That Mezei is a security risk properly excluded from the United States and that no authority exists in law for releasing him merely because he has been detained a prolonged period while attempts were made to deport him. (2) That Mezei is not really being detained because he has always been free to leave the country when he wanted. This, in view of the clear docu-

---

shall be excluded and deported unless the Secretary of State is satisfied that the admission of the alien would not be prejudicial to the interests of the United States."

"(b) In the case of an alien temporarily excluded by an official of the Department of Justice on the ground that he is, or may be excludable under one or more of the categories set forth in § 175.53, no hearing by a board of special inquiry shall be held until after the case is reported to the Attorney General and such a hearing is directed by the Attorney General or his representative. In any special case the alien may be denied a hearing before a board of special inquiry and an appeal from the decision of that board if the Attorney General determines that he is excludable under one of the categories set forth in § 175.53 on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest."

mentary evidence that Mezei cannot gain admission anywhere, hardly jibes with the usual cold realism of immigration policies. The government states flatly that an alien applying for admission to the United States (and this includes one who has already arrived on our shores) has no Constitutional rights. I do not agree. The Constitution applies even to aliens on Ellis Island. "Wherever the Constitution of the United States is applicable, and that includes ports of entry, an alien as well as a citizen is guaranteed that he will not be deprived of his liberty without due process". In re Krajcirovic, supra [87 F.Supp. 382].

What constitutes an unreasonable detention is a perplexing matter. Section 154, Title 8 U.S.C.A. provides that "All aliens brought to this country in violation of law shall be immediately sent back * * * to the country whence they respectively came * * * unless in the opinion of the Attorney General immediate deportation is not practicable or proper."

The government insists that there can be no unreasonable detention in the case of an alien held for security reasons. To secure the argument, it is necessary to hurdle several cases in which an alien, detained for an unreasonable period, *has* been released. In U. S. ex rel. Janavaris v. Nicolls, supra, Judge Wyzanski said in 47 F.Supp. at page 202: "A more important question remains: Whether under the statute giving the district courts power to issue writs of habeas corpus this Court has the power to release from custody an alien who has been detained an unreasonably long period of time by the Department of Justice after it has become apparent that although a warrant for his deportation has been issued, the warrant cannot be effectuated. That this Court has such power is hardly open to question. * * * The theory on which the court is given the power to act is that the warrant of deportation, not having been able to be executed, is functus officio and the alien is being held without any authority of law.

"The issue, therefore, simmers down to this: Has the Department of Justice kept the alien such an unreasonably long period of time that the warrant has lost its efficacy?" Judge Wyzanski found five months detention excessive.

In In re Krajcirovic, supra, 87 F.Supp. 381, Judge Wyzanski bolstered his decision in In re Janavaris. In that case he held a detention period of nine months unreasonable. The alien had been ordered excluded. It was likely that only Czechoslovakia, which he had fled, would take him. There, he was a political refugee, sentenced in absentia to death. The language of the case is pertinent here. "The District Director contends Krajcirovic is not confined because the Department of Justice has given him the option to depart voluntarily to any place outside the United States * * *.

"In my opinion this contention rests on an unsound factual basis."

In the case at bar, no country has yet indicated a willingness to accept Mezei.

Judge Leibell, in this district, has held a seven months detention period unreasonable. Staniszewski v. Watkins, supra. [80 F.Supp. 135.] No country would take Staniszewski. He was born in Poland but Poland rejected him. Judge Leibell said: "What is to be done with the petitioner? The government has had him in custody almost seven months and practically admits it has no place to send him out of this country. * * * I am most concerned with the seemingly helpless status of the petitioner and the failure of the proper officials to find a means of releasing petitioner from confinement at Ellis Island."

All of these cases should be limited to their facts, the government asserts. They do not involve an alien who has been adjudged a security risk. According to the government, the security element justifies an infinitely longer detention. There is some logic in this. An alien, who in a given case might be proved an enemy spy, should not be entitled to roam free after a short detention period, if the government is unable to effect his deportation. More aptly, in a case of that nature, the period of reasonable detention would be longer. A reasonable time is not a fixed, immutable period. It varies with the circumstances of each case. U. S. ex rel. Consola v. Karnuth, D.C.W.D.N.Y.1945, 63 F.Supp. 727;

Moraitis v. Delany, D.C.Md.1942, 46 F. Supp. 425, modified other grounds, 4 Cir., 1943, 136 F.2d 129.

There is no doubt that the security charge adds an element of great seriousness. Judge Ryan has recently decided a similar case in this district. U. S. ex rel. Bojarchuk v. Shaughnessy (decided October 31, 1951).[2] Bojarchuck was detained for 13 months at Ellis Island after being excluded as a security risk. The court denied his application for habeas corpus. The government relies heavily on the general similarity of that case as binding precedent in this. It is important to note Judge Ryan's exact words: "That relator has long been detained cannot be questioned; that this is of his own making appears clear. Unsuccessful efforts to deport him to Poland where he was born, were made by the Government. *Relator has always been and now is free to leave this country for any country he desires. He has not chosen to do so; he may not by his own inaction* and attempt at unlawful entry gain admittance into this country, especially after a finding that his entry is deemed inimical for security reasons." (Emphasis added).

The government points to Judge Ryan's statement that the relator is free to leave the country. He cannot stay here simply by his own inaction. The government observes that Mezei had no trouble in leaving the country in 1948 "when it served his purpose", and tells this court, "He found no difficulty whatever in procuring Hungarian documents and travelling to Hungary in 1948; yet he now pretends that he cannot depart from the United States and expects the administrative authorities and this court to give consideration to such specious contention." I find Mezei's contention far from specious. The world has changed a great deal since 1948. The government admits that *it* has been negotiating with Hungary for about ten months. There has been no observable progress. Mezei has produced documents before the court to show that at least 15 countries have refused him admission. If this is inaction, I should appreciate a government definition of action.

Mezei's case may further be distinguished from Bojarchuk by the difference in detention period. Bojarchuk was held 13 months. Mezei has now been held 21 months. The variance is great. The government must be prepared to show a grave security risk to justify the detention time.

We have come full circle again to the basic question—what is an unreasonable detention. I have said that the circumstances of each case determine the reasonableness or unreasonableness. The government sounds a grim warning that releasing this alien from detention will bring a flood of enemy agents, spies, saboteurs, madmen, homicidal maniacs and lepers down upon us. I agree that in the proper case reasons may exist to detain an alien for a prolonged period. A grave security risk of the character envisioned by the government surely may be one of these.

I also recognize that periods ranging from five months to nine months have been held unreasonable in the past and that when a court says the detention of a security risk for thirteen months is *not unreasonable,* that is far from saying that twenty-one months *is reasonable.* I think a burden has been placed on the government. In my mind the detention of an alien for 21 months pending deportation, is, absent other considerations, completely unreasonable. The burden now shifts to the government to prove to this court that Mezei's release, pending effectuation of the deportation order, would endanger public safety. If the information on which such a decision must be based is of such a confidential nature that its disclosure would be serious breach of security, the offer of proof will be heard *in camera.*

The government will have a period of time hereinafter fixed to bring before the court evidence, in accordance with this opinion, which would justify Mezei's detention for a further period. If deportation should be effectuated during the fixed period, that will dispose of the case. I am aware that Mezei argues that the government can only deport him to the country from where he came, Title 8 U.S.C.A. § 154, which accord-

2. No opinion for publication.

ing to judicial interpretation means France and England and/or Hungary. Mezei has shown his willingness to go elsewhere if the government can so arrange. If he does not consent, that would, of course, be reasonable grounds for a further detention.

If the government has not satisfied this court as to the disposal of Mezei's case or his continued detention by December 10, 1951, he will be released upon conditions that the court will set at that time on application.

Settle order.