YIU SING CHUN and Jee-Chiu Shan, Petitioners,

v.

Charles C. SAVA, District Director, Immigration and Naturalization Service New York District, and Kevin Doyle, Deputy Assistant Director for Detention and Deportation, Immigration and Naturalization Service, New York District, Respondents.

No: 82 CIV 2775.

United States District Court, E.D. New York.

Oct. 25, 1982.

---

Chu, Chung & Chiu, New York City (Robert J. Belluscio, New York City, of counsel), for petitioners.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Thomas B. Roberts, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for respondents.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1976). The petition was filed on behalf of two Chinese nationals who have been denied political asylum in this country. Petitioners are currently detained at the United States Immigration Detention Facility in Brooklyn, New York pending arrangements by Respondent for their deportation.

Petitioners challenge the legality of their detention on the ground that the District Director's decision to deny political asylum was "arbitrary, capricious, and an abuse of discretion." Petition Para. 3. They also allege that Respondent's decision to deny them parole pending resolution of their asylum applications was an abuse of discretion.

Jurisdiction is invoked under 28 U.S.C. § 2241 (1976). Respondent argues that this Court lacks authority to entertain the petition because of jurisdictional limitations inherent in the Immigration and Nationality

Act, 8 U.S.C. § 1101 *et seq.* Resolution of the jurisdictional issue, however, requires an understanding of the factual background accompanying these petitions.

### FACTS

In May, 1982 Petitioners emigrated illegally from the People's Republic of China ("PRC") to Hong Kong. On June 28, 1982 Petitioners stowed away aboard the S.S. American Lark without the knowledge of its Captain and without documentation permitting them to enter the United States. Several hours out of Hong Kong, the crew of the American Lark discovered Petitioners, who identified themselves as "Chinese refugees" seeking asylum in the United States. They were placed in custody aboard the ship and the United States Immigration and Naturalization Service ("INS") was notified.

When the American Lark made port in Oakland, California on July 14, 1982, Petitioners formally applied to the San Francisco District Director of the INS for political asylum. Because neither Petitioner speaks English, each was assisted in the completion of his application (INS Form I–589: "Request For Asylum In the United States") by a Chinese-speaking employee of U.S. Lines, the owner of the American Lark. Petitioners' Form I–589's indicate that they were subsequently interviewed by an INS officer with the help of an interpreter. The INS ordered them to remain in detention aboard ship pending review of their applications by the District Director.

Before their applications could be decided, the American Lark departed Oakland, bound for New York via the Panama Canal. En route, the ship called at ports in California, Panama, and Georgia where, on July 30, 1982, Petitioners were served with the decision of the San Francisco District Director denying their applications for asylum.

A few days later, the ship arrived in New York. Petitioners, with the assistance of counsel, completed new Form I–589's and submitted them to the New York District Director of the INS for reconsideration. Pending review of their applications, Petitioners were removed from the ship and detained at the Immigration Detention Facility in Brooklyn. The New York District Director ultimately denied Petitioners' applications for asylum on September 17, 1982. This petition for habeas corpus followed. The United States Attorney has agreed to stay deportation proceedings pending this Court's review of the petition for a writ of habeas corpus.

### JURISDICTION

Under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, aliens who are categorized as "stowaways" are afforded only limited substantive protections. Although Petitioners argue that they should not be viewed as stowaways, I find their argument unpersuasive given the circumstances of their passage to this country.

The papers before the Court indicate that Petitioners concealed themselves aboard the S.S. American Lark in order to obtain passage to the United States without the knowledge or permission of the ship's Captain and without passports, travel documents, or immigration visas. *See In re Krajcirovic,* 87 F.Supp. 379 (D.Mass.1949). There is no indication that Petitioners anticipated paying for their passage. As soon as their presence aboard ship was discovered, Petitioners were placed in detention for the duration of the voyage. Their assertion that they were refugees seeking political asylum does not affect their classification as stowaways.

Although I accept the Government's characterization of the Petitioners as stowaways, I do not agree with the Government's conclusion that this Court lacks subject matter jurisdiction to review habeas corpus petitions submitted by stowaways seeking political asylum pursuant to the Refugee Act of 1980, 8 U.S.C. § 1158(a).

The Government points out that 8 U.S.C. § 1323(d) effectively denies stowaways the right to exclusion hearings (and appeals therefrom) that are normally afforded to other classes of aliens under 8 U.S.C.

§§ 1225 and 1226. The Government argues that because stowaways are not entitled to § 1226 exclusion hearings, they are, therefore, precluded from seeking habeas corpus under 8 U.S.C. § 1105a(b). This simply does not follow. At least one circuit, after analyzing the legislative history of the pertinent subsections, has rejected this argument in a political asylum case. In *Garcia v. Smith*, 674 F.2d 838, *aff'd on panel rehearing*, 680 F.2d 1327 (11th Cir.1982), the Court noted that:

> [E]ven though 8 U.S.C.A. § 1323(d) may indicate that exclusion of stowaways is not pursuant to Section 1226, the clear intent of Congress in passing Section 1105a(b) was to make petitions for habeas corpus the sole procedure for testing all decisions to exclude aliens, including those who are stowaways.

674 F.2d 838, 840 n. 1, citing H.Rep. No. 1086, 87th Cong., 1st Sess., *reprinted in* [1961] U.S.Code Cong. & Ad.News 2950, 2974–77.

■ It is noteworthy that Petitioners do not seek judicial review of a § 1226 exclusion order. There is no such order. Rather, their habeas corpus petitions seek review of the New York District Director's denial of political asylum under the Refugee Act of 1980, 8 U.S.C. § 1158(a) and federal regulations promulgated thereunder. Nothing in § 1158(a) suggests that the asylum applications of stowaways are to be treated differently from applications of other categories of aliens. On the contrary, that subsection directs the Attorney General to "establish a procedure . . . *irrespective of such alien's status*, to apply for asylum. . . ." 8 U.S.C. § 1158(a) (emphasis added).

The argument that § 1323(d) deprives the Court of subject matter jurisdiction in the instant case confuses the admittedly limited nature of a stowaway's substantive rights with the jurisdiction of the district courts to vindicate those substantive rights, however limited they are. *See Garcia, supra*, 674 F.2d at 840. Accordingly, I find that Petitioners' applications for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 are appropriate methods of challenging alleged procedural infirmities in the District Director's denial of Petitioners' applications for political asylum.

## REVIEW OF THE DISTRICT DIRECTOR'S DECISIONS

■ Whether to grant political asylum lies within the discretion of the Attorney General. Under 8 U.S.C. § 1158(a), "the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of Section 1101(a)(42)(A) of this title." The latter Section defines "refugee" as any person who:

> is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [the country of such person's nationality] because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

The Attorney General's authority in political asylum matters is, in turn, delegated to the various district directors of the INS pursuant to 8 C.F.R. 208.1. Under the pertinent federal regulations, "[t]he district director may approve or deny the asylum application in the exercise of discretion," 8 C.F.R. 208.8(a), and "[n]o appeal shall lie from the decision of the district director." 8 C.F.R. 208.8(c). In addition, "[t]he district director shall deny a request for asylum . . . if it is determined that the alien: (i) [i]s not a refugee within the meaning of Section 101(a)(42) of the Act . . . ." 8 C.F.R. 208.8(f)(1)(i).

■ In the instant case, both the San Francisco District Director and the New York District Director determined that Petitioners were not "refugees" because Petitioners had not demonstrated a "well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion," should they be returned to the P.R.C. 8 C.F.R. 208.5. The sole question remaining for this Court is whether such a determination was an abuse

of discretion by the District Directors. I hold that it was not.

In *Bertrand v. Sava*, 684 F.2d 204 (2d Cir.1982), the court admonished against the substitution by a district court of its own judgment for that of the District Director:

> [A]s long as the Attorney General exercises his broad discretion ... his decision may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors ... and too little to others .... The discretion may not be exercised to discriminate invidiously against a particular race or group or to depart without rational explanation from established policies .... But the Attorney General's exercise of his broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien....

*Bertrand v. Sava*, at 212.

### THE OAKLAND APPLICATIONS

Petitioners were interviewed in Oakland, California on July 14, 1982, by INS Officer Fred Brock. INS interpreter Jennie Wong assisted. This interview was conducted pursuant to 8 C.F.R. 208.6 which requires the examination of the applicant by an INS officer prior to adjudication of an asylum application.

The San Francisco District Director, in compliance with 8 C.F.R. 208.7, then forwarded Petitioners' Form I–589's to the State Department BHRHA for an advisory opinion. That advisory opinion, rendered by Mr. Lawrence L. Arthur, Chief of the Asylum Division of the BHRHA stated that Petitioners had not met the burden of establishing a "well-founded fear of persecution within the meaning of the United Nations Convention and Protocol Relating to the Status of Refugees upon return to the PRC." The Chief of the Asylum Division substantiated his views:

> The applicant has not been persecuted in the past in the People's Republic of China (PRC). PRC officials have adopted a rather permissive attitude toward emigration, legal and illegal. The typical penalty imposed for violations of Article 176, Section 6 of Chinese Criminal Law (illegal Departure) is fifteen days detention. The maximum penalty, in serious cases, is one year which, in the unlikely event it were imposed, would constitute prosecution and not persecution.

Upon receipt of the State Department's advisory opinion, the San Francisco District Director, in a two-and-one-half page opinion, denied Petitioners' applications.

### THE NEW YORK APPLICATIONS

Upon arrival in New York, Petitioners, with the assistance of counsel, prepared and submitted new Form I–589's for reconsideration by the Respondent New York District Director. These Form I–589's were submitted to the State Department for a second advisory opinion. Mr. Arthur, the Chief of the Asylum Division, treated Petitioners' applications as "up-dates" of their original asylum applications:

> Upon review of the additional information submitted, we remain of the view expressed in our earlier letter to the San Francisco office of INS, that the applicant has failed to establish a well-founded fear of persecution upon return to the People's Republic of China.

After receiving the State Department's up-dated advisory opinion, the New York District Director denied Petitioners' applications. The denial was communicated to Petitioners in a brief letter to which (pursuant to 8 C.F.R. 208.8(d)) he appended the BHRHA's advisory opinion.

■ Examining the application proceedings in their entirety, I find no abuse of discretion on the part of the INS. Although the New York District Director's denial of asylum was communicated to Petitioners and their counsel in a summary fashion, the District Director's brevity is

understandable in light of the INS's apparent decision to treat Petitioners' second applications as amplifications of their first, a decision which I believe to be within the discretion afforded to the INS. The State Department's second advisory opinion implicitly incorporated its original reason for recommending denial of the applications— absence of a well-founded fear of persecution. That opinion, read in the context of the State Department's original opinion, afforded Petitioners sufficient notification of the basis upon which the New York District Director denied their applications.

█ In addition, in the context of an asylum proceeding, it was not an abuse of discretion for the District Director to decline to consider exhibits which purportedly detailed general political conditions in China when the State Department had already based its advisory opinion upon the personal statements contained in the Petitioners' Form I–589's and upon information which was apparently more specific in nature than that contained in Petitioners' proposed exhibits. *See* quotation from original advisory opinion, *supra.*

█ Petitioners' contention that it was an abuse of discretion to deny them the opportunity to rebut the contents of the State Department's advisory opinions is also without merit. Under 8 C.F.R. 208.8(d), "[i]f the BHRHA opinion is included in the record, the applicant shall be given an opportunity to inspect, explain, and rebut the opinion, as prescribed in § 103.2(b)(2) of this Chapter." In the instant case, the advisory opinions were apparently relied upon by the District Director and included in the record; however, 8 C.F.R. 103.2(b)(2) does not give an applicant an absolute right of rebuttal. It provides in pertinent part:

> An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, *except* as hereinafter provided. If the decision will be adverse to the applicant or petitioner on the basis of derogatory evidence considered by the Service *and of which the applicant or petitioner is unaware,* he shall be advised thereof and

> offered an opportunity to rebut it and present evidence in his behalf before the decision is rendered. . . .

8 C.F.R. 103.2(b)(2) (emphasis added). There being no indication that the State Department relied upon evidence "of which the applicant[s] [were] unaware," Petitioners were not entitled to rebut the advisory opinions.

█ Finally, Petitioners' allegation that it was error to refuse to allow them to renew their applications before an Immigration Judge is a veiled attempt to appeal the decision of the District Director. Clearly, however, 8 C.F.R. 208.8(c) provides that "[n]o appeal shall lie from the decision of the district director." If Petitioners are attempting to invoke 8 C.F.R. 208.9 which provides that "[w]here an application for asylum is denied by the district director, the applicant may renew his/her request for asylum before an immigration judge in exclusion or deportation proceedings," then such an attempt is premature since no such proceedings have yet been commenced.

## DISTRICT DIRECTOR'S DENIAL OF PAROLE

Petitioners have also challenged the District Director's decision to deny them parole pending a decision upon their asylum application. At first glance the parole issue would now appear to be moot. This is so because the political asylum decisions have already been rendered, and the Court has found no abuse of discretion on the part of the District Director. It is noteworthy, however, that 8 C.F.R. 208.9 provides that an applicant whose asylum application has been denied may renew his application before an immigration judge in ensuing exclusion or deportation proceedings. The District Director's denial of parole would effectively extend until the termination of those proceedings as well. Accordingly, Petitioners challenge to the parole decision is not moot.

█ The standard for review of a District Director's decision to deny parole was established in the Second Circuit in *Ber-*

*trand v. Sava, supra.* Under the circumstances of this case, I find that the District Director did not abuse the broad discretion afforded to him in determining an applicants suitability for parole. *See Bertrand v. Sava,* 684 F.2d 204 at 213. Accordingly, the Petitioners shall remain in detention pending their future exclusion or deportation proceedings.

SO ORDERED.