Janet Gilda MARTINEZ, an infant, by her mother, Maria J. Rodriguez-Sanchez, and Frank Martin Perrault, an infant, by his father, Frantz E. Perrault, et al., Plaintiffs,

v.

Griffin BELL, Individually, and as Attorney General of the United States, Cyrus Vance, Individually, and as Secretary of State of the United States, Barbara N. Watson, Individually, and as Administrator of the Bureau of Security and Consular Affairs, Department of State, Julio Arias, Individually, and as Director of Visa Office, Bureau of Security and Consular Affairs, Department of State, Vernon McAninch and Elizabeth J. Harper, are both sued Individually, and as Consuls of the United States of America, Mexico, D.F., Mexico, and Montreal, Canada, respectively, Leonel J. Castillo, Individually, and as Commissioner of Immigration and Naturalization Service, Mario Noto, Individually, and as Deputy Commissioner of Immigration and Naturalization Service, and George Vician, Jr., Individually, and as District Director of Immigration and Naturalization Service, Defendants.

No. 77 Civ. 5964 (GLG).

United States District Court,
S. D. New York.

April 5, 1979.

Endorsement On Motion To Amend Decision And Judgment May 3, 1979.

Morton B. Dicker, The Legal Aid Society, New York City, for plaintiffs, by Julius C. Biervliet, New York City, of counsel.

Robert B. Fiske, Jr., U.S. Atty., New York City, for defendants, by Thomas H. Belote, Asst. U.S. Atty., New York City.

## OPINION

GOETTEL, District Judge.

In this action for declaratory and injunctive relief, the plaintiffs, American citizen children represented by their alien parents, seek to have declared unconstitutional section 212(a)(14) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1182(a)(14), *as amended by* Pub.L. No. 94–571, 90 Stat. 2705 (October 20, 1976), and to enjoin its enforcement. The plaintiffs also seek an injunction directing the defendants to afford to their alien parents whatever permanent status or priority dates on the consular waiting lists necessary for those parents to become legal permanent residents of the United States. The defendants have now moved to dismiss the complaint, alleging lack of subject matter jurisdiction, failure to exhaust administrative remedies, and failure to state a claim upon which relief can be granted. The plaintiffs have cross-moved for summary judgment.

The plaintiffs in this action, all of whom are minors, were born in the United States between 1965 and 1977 and are citizens by reason of birth. U.S.Const. amend. XIV, § 1. Their parents are natives and citizens of independent countries in the Western Hemisphere who wish to obtain permanent resident status in the United States.

Under the terms of section 212(a)(14) of the Act an alien who wishes to enter the United States for the purpose of performing skilled or unskilled labor must obtain a certificate from the Secretary of Labor prior to admission. Until January 1, 1977, however, an exemption to the labor certification rule existed for parents from the Western Hemisphere of citizen children.[1] Upon establishment of entitlement under this section (by filing the appropriate forms), parents of such children would receive an exemption from the certification requirement and would be given a priority status on the consular waiting lists.

The exemption for Western Hemisphere parents of citizen children was repealed by Congress on October 20, 1976. Pub.L. No. 94–571, 90 Stat. 2705 (effective January 1,

---

1. Prior to amendment, section 212(a)(14) provided:

"Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not ad-

versely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a)(27)(A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title."

1977).[2] Under the Act as amended, parents of a citizen child had to establish their entitlement to the exemption prior to January 1, 1977, or they would lose their privilege to this Western Hemisphere exemption and to the accompanying priority date.

The parents of the plaintiffs in the instant action all seemingly would have qualified for the exemption under section 212(a)(14) of the Act prior to January 1, 1977. Only two of them, however, allege that they took the necessary step of filing a form FS–497A with the American Consulate in the country of their origin so as to establish their entitlement to the exemption prior to the effective date of the amendment. These two, Rodriguez, parents of Martinez, and Perrault, claim that their forms were mailed prior to the effective date, although they were not received until after January 1. The defendants dispute these claims. The other plaintiffs' parents admittedly did not file the form.

The plaintiffs assert that they each have an "inborn" and "inalienable" right under section 212(a)(14) to have confirmed priority dates set for their parents, despite the failure to establish entitlements while the act was in force, and that no legislative change could strip them of these rights. In the alternative, they argue that the amendment to section 212(a)(14) is invalid under the Equal Protection Clause of the Fifth Amendment.

**I**

▪ Jurisdiction in this action is premised upon several provisions, particularly section 279 of the Act, 8 U.S.C. § 1329, and on 28 U.S.C. §§ 1331 and 1361.[3]

▪ Section 1361 provides jurisdictional for the issuance of a writ of mandamus. For such writ to be issued, it is necessary for a court to find:

"(1) a clear right in the plaintiff to the relief sought;

(2) a plainly defined and preemptory duty on the part of the defendant to do the act in question; and

(3) no other adequate remedy available."

*Lovallo v. Froehlke,* 468 F.2d 340 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). *See Hsieh v. Kiley,* 569 F.2d 1179 (2d Cir. 1978); *Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11 (3d Cir. 1975). For jurisdiction to lie under this provision there must be some ministerial, non-discretionary duty which a defendant has failed to perform.

▪ These standards have not been met in this case. Plaintiffs seek to compel the defendants either to issue a visa or to grant a priority date to enable their parents to obtain permanent resident status in the United States. The decision to issue a visa, however, is that type of discretionary conduct not within the scope of mandamus

---

**2.** Under the terms of Pub.L. No. 94–571, 90 Stat. 2705, section 212(a)(14) was amended to provide: (new material is underlined, deleted material in brackets).

"Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers [in the United States] who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place [to which] where the alien is [destined] to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply [to special immigrants defined in section 101(a)(27)(A) (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence),] to preference immigrant aliens described in section 203(a)(3) and (6), and to nonpreference immigrant aliens described in section 203(a)(8)."

**3.** Jurisdiction was also initially based upon 28 U.S.C. § 1346(a)(2) and 5 U.S.C. §§ 701–706 (section 10 of the Administrative Procedure Act). Plaintiffs, however, have chosen not to pursue these grounds. In any event, the Court believes that jurisdiction would not lie under these sections.

jurisdiction.[4] As the plaintiffs are owed no duty "so plainly prescribed as to be free from doubt," *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972), *rev'd on other grounds*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), mandamus jurisdiction is lacking. *see Hsieh v. Kiley, supra.*

■ The plaintiffs next allege that jurisdiction may be based on section 279 of the Act, 8 U.S.C. § 1329. Section 279 provides district courts with jurisdiction over all civil and criminal actions "arising under any of the provisions of this subchapter [II]." Since section 212(a)(14) is contained in subchapter II of the Act, the plaintiffs assert that this Court has jurisdiction to review the constitutionality of it.

The defendants challenge this assertion. They contend that what is really being attacked by the plaintiffs is not the constitutionality of section 212(a)(14) but rather the authority of the Secretary of State pursuant to section 104(a) of the Act to give instructions and establish regulations relating to consular waiting lists and the granting of priority dates for applicants.[5] Since section 104(a) is contained in subchapter I of the Act, the defendants contend that there is no jurisdiction under section 279. In the alternative they assert that since the relief sought by the plaintiffs would interfere with the visa issuing process, the established doctrine of consular non-reviewability serves as a bar to this Court's jurisdiction. *See Gomez v. Kissinger*, 534 F.2d 518 (2d Cir. 1976).

It seems apparent that if the plaintiffs were challenging the authority of the Secretary of State under section 104(a) to promulgate rules and regulations for the enforcement of the provisions of the Act (in this case to enforce section 212(a)(14)), jurisdiction would not lie. This, however, is not the case. What is challenged in the instant action is not the Secretary of State's authority, or the rules and regulations themselves, but rather the constitutionality of the underlying provisions which such rules and regulations are intended to enforce. Since it is the constitutionality of section 212(a)(14) which is being tested, and since that section is within subsection II of the Act, jurisdiction must exist under section 279.

■ The defendants nonetheless assert that the doctrine of consular non-reviewability bars the relief sought by the plaintiffs (which defendants characterize as an order to compel a United States Consul to grant visas and immigrant status to the alien parent). There is authority for the doctrine that "the judiciary will not interfere with the visa issuing process." *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Hsieh v. Kiley*, 569 F.2d at 1181; *Gomez v. Kissinger*, 534 F.2d at 518; *Hitai v. I. N. S.*, 343 F.2d 466 (2d Cir. 1965). Thus it is not within the jurisdiction

4. In *Hitai v. I. N. S.*, 343 F.2d 466, 467 (2d Cir. 1965), the court stated:

"The exclusion and deportation of aliens pursuant to statute falls within that category of policy decisions, which, 'so far as the subjects affected are concerned, are necessarily conclusive upon all . . . [the government's] departments and officers,' including 'the judiciary.' *The Chinese Exclusion Case*, 130 U.S. 581, 606, 9 S.Ct. 623, 32 L.Ed. 1068 (1889)."

5. Section 104(a) of the Act, 8 U.S.C. § 1104(a) provides:

"The Secretary of State shall be charged with the administration and the enforcement of the provisions of this Act and all other immigration and nationality laws relating to (1) the powers, duties and functions of diplomatic and consular officers of the United States, except those powers, duties and func-

tions conferred upon the consular officers relating to the granting or refusal of visas; (2) the powers, duties and functions of the Bureau of Security and Consular Affairs; and (3) the determination of nationality of a person not in the United States. He shall establish such regulations; prescribe such forms of reports, entries and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out such provisions. He is authorized to confer or impose upon any employee of the United States, with the consent of the head of the department or independent establishment under whose jurisdiction the employee is serving, any of the powers, functions, or duties conferred or imposed by this Act or regulations issued thereunder upon officers or employees of the Department of State or of the American Foreign Service."

of this Court to review a consular or Immigration and Naturalization Service decision whether to issue a visa (as was noted in regard to mandamus jurisdiction), nor may the Court direct such officials to issue a visa or grant resident alien status to any individual. *See, e. g., Ubiera v. Bell,* 463 F.Supp. 181 (S.D.N.Y.1978). The Court may, however, without violating the consular non-reviewability doctrine, examine the constitutionality of the statute employed by the Secretary in exercising his discretion. As was noted in *Sovich v. Esperdy,* 319 F.2d 21, 26–27 (2d Cir. 1963), "[f]or the courts to rule upon that issue is not an intrusion into the [Secretary's] discretion. It is rather an interpretation of the statutory prerequisites to any proper exercise of his discretion." *See Kovac v. I. N. S.,* 407 F.2d 102 (9th Cir. 1969); *Application of Maringolo,* 303 F.Supp. 1389 (S.D.N.Y.1969). Accordingly, this Court may test the constitutionality of the underlying provision, section 212(a)(14) of the Act as amended, upon which the defendants' discretionary decision to deny the plaintiffs' parents immigration visas was premised. To this limited extent jurisdiction exists under section 279.[6]

■ Finally, the defendants contend that subject matter jurisdiction is lacking as a result of the plaintiffs' failure to exhaust administrative remedies. The Court does not agree. The plaintiffs are challenging the constitutionality of the underlying statute which the administrative body is charged with enforcing. While an administrative hearing may serve to resolve any factual disputes that may exist in regard to compliance, or noncompliance with the statute, it is for the federal courts, and not for the administrative body, to determine the

constitutionality of the statute itself. *Stokes v. United States,* 393 F.Supp. 24, 28 (S.D.N.Y.1975). *See Matter of Coronel-Paredes,* No. A22 521 755 (U.S. Dept. of Justice, Jan. 25, 1978) (oral opinion of immigration judge). Accordingly, the Court has subject matter jurisdiction to resolve the constitutional issues presented, regardless of whether administrative remedies have been exhausted. Where factual issues exist with respect to the two claims of timely filing, however, plaintiffs must pursue their administrative remedies.

The Court, therefore, holds that jurisdiction exists to examine the constitutionality of section 212(a)(14) of the Act, but not to provide the injunctive and other relief sought or to resolve the specific claims of compliance by two of the plaintiffs.

## II

■ It has been firmly established by the Supreme Court that " '[o]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens. *Oceanic Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)", quoted in *Kleindienst v. Mandel,* 408 U.S. at 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683. *See Silverman v. Rogers,* 437 F.2d 102 (1st Cir. 1970). Congress may, if it chooses, discriminate against aliens in a manner which, if applied to citizens, would be unconstitutional, *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), and may use wide discretion in determining the criteria for their admission. *Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954); *Harisiades v. Shaughnessy,* 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952).

---

6. Jurisdiction in this action is also premised upon 28 U.S.C. § 1331 as arising under the constitution or laws of the United States. The plaintiffs argue that this provision serves as an independent basis of jurisdiction. The Court agrees that to the extent of providing jurisdiction to test the constitutionality of section 212(a)(14) of the Act this action may be based upon 28 U.S.C. § 1331 as well as under section 279. *Stokes v. United States,* 393 F.Supp. 24, 27–28 (S.D.N.Y.1975). *See Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389

(1974). Congress, however, has expressed its intent to limit the jurisdiction of district courts to review claims arising under the Act, *Chen Chaun-Fa v. Kiley,* 459 F.Supp. 762, 765–766 (S.D.N.Y.1978), and has set forth those limits in section 279. Section 1331 provides no more extensive basis for jurisdiction than does section 279. This Court, therefore, may not reach questions presented in the instant complaint under § 1331 which it could not reach under § 279.

Given the extensive latitude and power which Congress has over the admission of aliens (and the limited rights of such aliens), this action has been brought by the citizen children of alien parents who claim that *their* rights, and not those of the alien parents, are being violated by the threat of eventual deportation of their parents. (None are presently under order of deportation.) The plaintiffs assert that enforcement of amended section 212(a)(14) with the possible resulting deportation of their parents, would deprive them of some unspecified "inborn," "inherent," or "inalienable" rights, and violate their right to equal protection of the laws.

 The plaintiffs initially contend that the Secretary of State has misinterpreted the amendment to section 212(a)(14). They argue that the amendment should only apply prospectively to parents of children born after the effective date, and that parents of children born before this date should still have the right to obtain priority status. The legislative history, however, indicates that Congress intended to remove, as quickly as possible, the disparities that existed in the immigration laws regarding admission of Western and Eastern Hemisphere immigrants and accordingly sought to eliminate the benefits which a Western Hemisphere parent of a citizen child received. H.R.Rep. No. 94–1553, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin. News 1976, p. 6073. Had Congress intended to exempt from the amendment the Western Hemisphere parents of citizen children born prior to the amendment's effective date, it undoubtedly would have so indicated. The plain intent to eliminate completely the exemption is quite apparent.[7]

Having determined that section 212(a)(14) of the Act as amended applies to persons similarly situated to the plaintiffs' parents, the Court must next determine whether the amended section can pass constitutional scrutiny.

 It is now firmly established that the deportation of alien parents of a citizen child does not deprive that child of any constitutional right, despite the fact that such action may result in the *de facto* departure of the child. *Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977); *Gonzales-Cuevas v. I. N. S.*, 515 F.2d 1222 (5th Cir. 1975); *Cervantes v. I. N. S.*, 510 F.2d 89 (10th Cir. 1975); *Perdido v. I. N. S.*, 420 F.2d 1179 (5th Cir. 1969); *Faustino v. I. N. S.*, 302 F.Supp. 212 (S.D.N.Y.1969), *aff'd* 432 F.2d 429 (2d Cir. 1970). In this regard it is clear that alien parents "who illegally remained in the United States for the occasion of the birth of their citizen children" did not thereby obtain any "extraordinary rights, . . ., directly or vicariously through their citizen children, to retain their illegally acquired residency status in this country while awaiting legalization of their entry and right to remain through the issuance of visas." *Gonzales-Cuevas v. I. N. S.*, 515 F.2d at 1224.[8]

 These plaintiffs, trying to avoid the effect of this holding, now allege that the amendment to section 212(a)(14) of the Act deprives them of some unspecified and

---

**7.** The Court finds no merit to the plaintiffs' contention that under 8 U.S.C. § 1101(a), the savings provision of the Immigration and Nationality Act of 1952, the 1976 amendments may not be interpreted to deprive the plaintiffs of the right to obtain priority status. By its very terms section 1101(a) applies only to the provisions of the 1952 Act, and not to the 1976 amendments, the savings provision for those amendments being section 9(b) of the Immigration and Nationality Act Amendments of 1976 (under which an alien was required to file for priority status prior to the amendment's effective date). Even if section 1101(a) did apply to the amendments, this would not bolster the plaintiffs' position since no right to priority status had either accrued to, or was in the process of being acquired by, the plaintiffs (with the possible exception of Martinez and Perrault) on or before January 1, 1977, and thus the amendments in no way divested them of any right previously obtained.

**8.** It appears that all of the plaintiffs' parents were in the United States illegally (either as a result of having entered the country illegally, or having overstayed the duration of their visas) at the time of their childrens' birth (the parents of plaintiff Perrault, however, although having overstayed their visa, were at that time attempting to obtain political asylum).

amorphous "inborn," "inherent" or "inalienable" right. Unsurprisingly, no support has been cited for this proposition. Nowhere in the Constitution is reference made to any inborn right of a citizen to obtain priority status on a consular waiting list for an alien parent. While the plaintiffs may at one time have had a statutory privilege whereby they could obtain priority status for their parents, the fact that such privilege once existed did not thereafter vest in them a constitutional right embodying the terms of that statutory grant. *Cf. United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955).[9]

■ A stronger argument for plaintiffs is that the amendment deprives them of equal protection of the law. Essentially, plaintiffs allege that the amendment creates two classes of American citizens born between October 3, 1965 and January 1, 1977 (the period during which the exemption under section 212(a)(14) was in effect), to parents from independent countries of the Western Hemisphere—those who complied with the terms of the Act by filing the appropriate form with the American consulate in the country of their parents' origin prior to the effective date of the amendment, and those who failed to file the form and thus did not timely establish entitlement. They claim that a distinction based upon the timely filing of a form is arbitrary and capricious, and unfairly discriminates against those who "were ignorant of a mere ministerial act." For these reasons the plaintiffs assert that, under whatever equal protection test this Court may apply, the statute, as interpreted, must fall.

This Court cannot agree. Prior to the effective date of the amendment to section 212(a)(14), all Western Hemisphere parents of citizen children had an equal opportunity to file for and obtain priority status on a

consular waiting list. No claim is made by the plaintiffs, nor is there any evidence, that some of these aliens were informed by the government of the requirement to file, and thus were able to comply, while others were not so informed. Rather, it appears simply that some aliens chose to take advantage of this privilege while others, similarly situated and with a similar opportunity, chose not to do so.

■ Effective January 1, 1977, the privilege to obtain priority status was repealed. This change equally affected all members of the class of Western Hemisphere parents of citizen children who had not as yet filed for priority status. The plaintiffs now seem to be arguing that any legislative enactment which terminates a privilege which had previously existed constitutes invidious discrimination as it arbitrarily deprives those who had not as yet availed themselves of that privilege of the opportunity to do so. There is no merit to this position. Legislation by its very nature has a beginning and an end and thus there necessarily must be differences between the statutory rights which exist at an earlier or later time. *United States v. Kline*, 354 F.Supp. 931, 935 (M.D.Pa.1972); *Russo v. Shapiro*, 309 F.Supp. 385, 391 (D.Conn.1969). So long as all individuals within a particular class are treated the same during the same period of time, the Equal Protection Clause is not violated. *See Francis v. I. N. S.*, 532 F.2d 268 (2d Cir. 1976). Since the Court finds that section 212(a)(14) does not discriminate against plaintiffs, we find there to be no equal protection violation.

■ The plaintiffs, however, relying upon the admonition in *Corniel Rodriguez v. I. N. S.*, 532 F.2d 301 (2d Cir. 1976), that the courts should strive for a "sensible and humane application of the law" in immigration matters, assert that it would be unfair

9. The decision in *Silva v. Bell*, No. 76 C. 4268 (N.D.Ill.1978) (unreported opinion), relied upon by the plaintiffs, is inapposite to the issues before this Court. In *Silva* the court held that an alien who had already been issued a priority date by a United States consular official and who was thus entitled to immigrant classification, could not thereafter, as a result of a sub-

sequent change in government policy (preference given to Cuban immigrants under the Cuban Adjustment Act), be deprived of the right to be considered for a visa number. In the instant action none of the plaintiffs had ever received a priority date and was therefore never entitled to immigrant classification.

to penalize the plaintiffs for noncompliance with a law which they did not understand and which was not explained to them. In *Corniel-Rodriguez* the court reversed an order of deportation of an alien who had not complied with the terms of a special immigration visa, finding that consular officials had failed to provide the alien with a warning that certain conduct would result in revocation of the visa. In that case, however, in contrast with the instant action, the consular officials were under a duty mandated by law[10] to provide such a warning. In the instant action no consular or immigration official had any such affirmative duty. The responsibility to learn about, and to comply with, the terms and conditions of pre-amendment section 212(a)(14) was placed by Congress solely on the alien.[11] There is nothing in the legislative history to indicate an intent to provide the excuse of "ignorance" or "lack of understanding" in order to avoid the consequences of noncompliance with the statute. *Ramos-Hernandez v. I. N. S.*, 566 F.2d 638 (9th Cir. 1977); *Rucker v. Saxbe*, 552 F.2d 998 (3d Cir. 1977). The plaintiffs' claimed ignorance of the terms of section 212(a)(14) does not, therefore, excuse them from their failure to comply timely with those terms.

In passing the amendments to the Act, Congress attempted to "eliminate the inequities in [the] existing law regarding the admission of immigrants from countries in the Western Hemisphere," so as to equalize the opportunity for admission from the Eastern and Western Hemispheres. H.R. Rep. No. 94–1553, 94th Cong., 2d Sess. 1 (1976), U.S.Code Cong. & Admin.News 1976, p. 6073. While the resulting changes in the law may have disadvantaged the plaintiffs, such changes in no way violated their constitutional rights or privileges.

Two of the plaintiffs, however, Martinez, for parent Rodriguez, and Perrault, allege that a form FS–497A was sent to the appropriate American consulate prior

to the effective date of the amendment. As a result they now contend that entitlement to priority status was timely established. Whether this is so, however, is a matter which should be determined in a factual hearing before the appropriate administrative body rather than by this Court. As to plaintiffs Martinez and Perrault, if they wish to pursue the remedy, the Immigration and Naturalization Service is directed to hold an administrative hearing so as to determine whether timely entitlement to priority status under the Act was established.

For all the above reasons, the plaintiffs' motion for summary judgment is denied, and the defendants' motion to dismiss the complaint is granted.

## ENDORSEMENT ON MOTION TO AMEND DECISION AND JUDGMENT

Defendants move for an order amending the decision and judgment of this Court dated April 10, 1979. They object to the portion of the decision which directs the Immigration and Naturalization Service to hold an administrative hearing to determine whether certain of the plaintiffs had established timely entitlement to priority status under the Immigration and Nationality Act. They raise three points:

1) That the Department of State, and not the Immigration and Naturalization Service, is the appropriate department to conduct such hearings;

2) that the Court lacks jurisdiction to direct either of the departments of the executive branch to conduct administrative hearings;

3) that, in any event, these hearings have already been conducted and that the determinations made are not subject to judicial review.

Defendants' first point is quite correct and the Court's order should have directed remand to the Department of State for the necessary hearings.

---

10. 22 C.F.R. § 42.122(d).

11. A number of the plaintiffs were, in fact, represented by counsel at times prior to the

effective date of the amendment, and thus should have been aware of the requirements of the Act.

The defendants' next two points, however, are contrary to the position taken by them at the argument of the cross-motions for summary judgment. Counsel for the Government at that time contended that summary judgment was appropriate, despite unresolved factual questions, since the plaintiffs had not exhausted their administrative remedies (where the controverted factual matters could be determined by the appropriate officers of the Foreign Service). No proof was offered that these hearings had been held or that determinations had been made.

■ The other issue, that of whether this Court can review such an administrative determination, was not a matter before the Court at any time and, accordingly, no opinion is expressed as to whether, or to what extent, the Court has jurisdiction to review a decision made in conformity with 22 C.F.R. § 42.62 and with the rules established by the Secretary of State. The fact that the courts do not have power to review the rules and regulations issued by the Secretary of State, under the authority granted to him by 8 U.S.C. § 1104, however, does not mean that this Court lacks jurisdiction to direct the Department of State to do that which it is both authorized and required to do. Consequently, the earlier order of this Court is amended only to the extent of directing that the Department of State conduct the necessary hearings, if it has not already done so.

As the other issues raised in the motion to reargue are not properly before this Court, the motion is, in all other respects, denied.

SO ORDERED.