Cristobal PEREZ–PEREZ, Petitioner,

v.

Jack HANBERRY, et al., Respondents.

Aristedes MACHADO–MATOS,
Petitioner,

v.

Jack HANBERRY, et al., Respondents.

Eduardo CRESPO–GOMEZ, Petitioner,

v.

Jack HANBERRY, et al., Respondents.

Nos. Civ. A. C85–221A, C85–1338A
and C85–834A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 15, 1985.

ORDER

SHOOB, District Judge.

Petitioners are three of the more than 1000 Cuban detainees who have filed individual petitions [1] for habeas corpus review of the Attorney General's refusal to parole

---

1. Each of these detainees filled out "form" petitions in Spanish that were translated into English by certified court interpreters.

them from the Atlanta Federal Penitentiary. After reviewing these petitions in January 1985, the Court certified that these actions are not frivolous and granted petitioners' motions to proceed *in forma pauperis*. The Court entered show cause orders on June 26, 1985, which directed the government to respond and to produce the complete administrative record relating to each petitioner. Also in that June 26, 1985 order, pursuant to petitioners' motions for appointment of counsel, the Court authorized the appointment of counsel under 18 U.S.C. § 3006A[2] to represent petitioners in these habeas actions.

Objecting to the appointment of counsel under 18 U.S.C. § 3006A, the government moved to stay all proceedings in the approximately 1000 cases in which the Court had authorized the appointment of counsel, pending a decision on appeal of whether counsel may properly be appointed and compensated under 18 U.S.C. § 3006A. To promote a swift and efficient resolution of this issue, the Court has agreed to rule on the government's objections to appointment of counsel under 18 U.S.C. § 3006A in these three "test cases" selected by counsel for the government and counsel for amicus, the class of Cuban detainees in *Fernandez-Roque v. Smith*, C81–1084A. The Court will then consider the government's motion to certify this order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

The three "test cases" present the following facts. Petitioner Perez-Perez, according to his petition, at one time was free on parole. In 1983 he served eleven days in jail for battery. On September 28, 1984, he was arrested for possession of drugs, but was released for lack of evidence. On October 31, 1984, INS officers took him into custody, and he has since remained at the Atlanta Penitentiary. Citing his unfamiliarity with the English language, his lack of access to his own administrative records,[3] the complexity of his case, and his financial inability to obtain representation, petitioner has moved for appointment of counsel pursuant to 18 U.S.C. § 3006A(g) and 28 U.S.C. § 1915(d).[4]

Petitioner Crespo-Gomez, according to his petition, also at one time was free on parole, but has been in detention in the Atlanta Penitentiary since December 9, 1983. Petitioner alleges that he has been detained because he "was supposed to belong to a vocational program" and because of "an offense on the outside" for which he has completed his sentence of one year. Petitioner's form motion for appointment of counsel presents the same contentions as that of Perez-Perez, except that petitioner states that he is fluent in English.

Petitioner Machado-Matos states that he has been detained at the Atlanta Penitentiary since June 28, 1983. Although his contentions are not clear in his translated petition, he appears to allege that he is being detained for having committed some offense in the United States and for "small infractions" of prison rules. Apparently, if released on parole, he must complete a twelve year sentence in Florida. His form motion for appointment of counsel raises the same contentions as the other two cases before the Court and states that he

---

**2.** The Court relied on subsection (g) of 18 U.S.C. § 3006A—the Criminal Justice Act of 1964 (CJA)—which authorizes discretionary appointment of counsel. It provides as follows:

(g) Discretionary appointment.

Any person subject to revocation of parole, in custody as a material witness, or seeking relief under section 2241, 2254, or 2255 of title 28 or section 4245 of title 18 may be furnished representation pursuant to the plan whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation. Payment for such representation may be as provided in subsections (d) and (e).

**3.** The government has informed the Court that, for security reasons, Cuban detainees at the Atlanta Penitentiary are not allowed to review their complete administrative records.

**4.** 28 U.S.C. § 1915(d) provides for the appointment of *pro bono* counsel. Although this order primarily addresses appointment of counsel under 18 U.S.C. § 3006A(g), section 1915(d) is briefly discussed below.

cannot read and write English well enough to pursue his case effectively.

In opposing the appointment of counsel under 18 U.S.C. § 3006A(g), the government presents three arguments. The Court will address them in order.

### I.

The first of the government's objections concerns the Court's jurisdiction[5] over these petitions under 28 U.S.C. § 2241, which in these actions is a prerequisite for appointment of counsel under 18 U.S.C. § 3006A(g). The government argues that jurisdiction lies exclusively under 8 U.S.C. § 1329.[6] It summarizes its argument as follows:

> The specificity of the judicial review provisions of the Immigration and Nationality Act, including 8 U.S.C. § 1329, preempt[s] and preclude[s] review under any general jurisdictional statute, such as 28 U.S.C. § 2241, especially when invocation of the more general statute might result in defeating a basic policy embodied in our immigration laws. Here, that policy is the Congressional ban on the representation of aliens at taxpayer expense in their exclusion and deportation proceedings. 8 U.S.C. § 1362.[7]

Government's Brief at 2.

■ A threshold problem with the government's objection to *jurisdiction* un-

der 28 U.S.C. § 2241 is that the government ignores the long history of the role of habeas corpus in immigration law, well-established at least since the beginning of this century. More than once the Supreme Court has explicitly held that an alien in custody under an exclusion order may bring a habeas corpus action to challenge its legality. *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 213, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953); *Chin Yow v. United States,* 208 U.S. 8, 13, 28 S.Ct. 201, 202, 52 L.Ed. 369 (1908); *see* 2 C. Gordon and H. Rosenfield, *Immigration Law and Procedure* § 8.6c (1985). It makes no difference that petitioners here do not challenge their exclusion as such, but rather their denial of parole pending exclusion; the Eleventh Circuit Court of Appeals, relying on *Mezei,* has held that "the decision to parole or to detain an excludable alien is an integral part of the admissions process" and that the Attorney General's parole decisions are reviewable by district courts. *Jean v. Nelson,* 727 F.2d 957, 963, 976 (11th Cir.1984), *aff'd on other grounds,* —— U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *see Mezei,* 345 U.S. at 213, 73 S.Ct. at 629 ("Concededly, [petitioner's] movements are restrained by authority of the United States, and he may by habeas corpus test the validity of his exclusion"). Other courts also have recognized explicitly

---

**5.** Each petition cites three bases of jurisdiction: 28 U.S.C. § 2241(c), 28 U.S.C. § 1331, and 8 U.S.C. § 1329.

**6.** Section 1329 of 8 U.S.C., also referred to as section 279 of the Immigration and Nationality Act of 1952 (INA), is set forth below:

> § 1329. Jurisdiction of district courts
> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 275 or 276 [8 U.S.C. §§ 1325, 1326] may be apprehended. No suit or proceeding for a

> violation of any of the provisions of this title shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor.

"This subchapter" refers to Title II of the Immigration and Nationality Act of 1952, 8 U.S.C. §§ 1151–1362.

**7.** That section provides as follows:

> § 1362. Right to Counsel
> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as he shall choose.

that an excludable alien may bring a habeas corpus action to challenge denial of parole. *See, e.g., Bertrand v. Sava,* 684 F.2d 204, 210 (2d Cir.1982); *Palma v. Verdeyen,* 676 F.2d 100, 105 (4th Cir.1982). Indeed, the government has been unable to cite a single analogous case in which a court has found habeas jurisdiction to be lacking.[8]

Congress has carefully preserved habeas corpus jurisdiction over cases concerning the exclusion of aliens, as is illustrated by the legislative history of the 1961 amendment to the Immigration and Nationality Act (codified at 8 U.S.C. § 1105a):

> An alien in custody under an order of exclusion may seek release by testing the lawfulness of his detention through habeas corpus. For three-quarters of a century, prior to the decision in [*Brownell v. We Shung,* 352 U.S. 180 [77 S.Ct. 252, 1 L.Ed.2d 225] (1956)], habeas corpus was the sole and exclusive method for testing in court an administrative determination that an alien was not entitled to enter the United States; unlawful deprival of his right to enter the country was held to institute unlawful imprisonment to obtain freedom from which habeas corpus lies (*U.S. ex rel. D'Amato v. Williams,* 193 F. 228 (S.D.N.Y.1909))....
>
> ....
>
> In the Shung case the court did not eradicate habeas corpus as a method of judicial review but said that both habeas corpus and the declaratory judgment suits were available for that purpose....
>
> ....
>
> The committee is convinced, from a review of the impressive body of court decisions involving use of habeas corpus for review of exclusion orders, that restricting an alien in exclusion proceedings to the writ of habeas corpus for judicial review of an order of exclusion deprives him of nothing but gives him every privilege of testing the legality of

the proceedings. This includes not only the question of a fair hearing but also the matter of determining that the exclusion has been ordered on a ground specified by Congress....

> The committee, after careful study of all the implications, is satisfied that habeas corpus provides a full, complete, and adequate method for judicial review of an exclusion order....

H.R.Rep. No. 1086, *reprinted in* 1961 *U.S. Code Cong. & Ad.News* 2950, 2974–76 (citations omitted).

■ The government's actual concern is not the Court's exercise of jurisdiction under 28 U.S.C. § 2241, but rather the derivative result that petitioner will be represented in this action by an attorney who shall be compensated pursuant to 18 U.S.C. § 3006A. That concern, however, does not speak to the Court's jurisdiction—its power to decide these cases. As demonstrated above, the Court's authority to exercise jurisdiction over these cases under 28 U.S.C. § 2241 has been firmly established by decades of jurisprudence. Properly viewed, the government's first argument raises the substantive concern that discretionary appointment of counsel under 18 U.S.C. § 3006A might be inconsistent with Title 8 or with the Criminal Justice Act itself. Thus, the government's "jurisdictional" argument must fail. As the Eleventh Circuit Court of Appeals has held, "The limited nature of the substantive rights an excluded alien may claim" are not to be confused with "the jurisdiction of the court to ensure that what rights the alien possesses are vindicated. The court has the jurisdiction to hear the habeas corpus petition of an excluded alien, however limited the substantive protections due him." *Garcia v. Smith,* 674 F.2d 838, 840, *modified on denial of reh'g,* 680 F.2d 1327,

---

**8.** In fact, a case relied on by the government in constructing its argument, *Daneshvar v. Chauvin,* 644 F.2d 1248 (8th Cir.1981), reaffirms the role of habeas corpus in judicial review of immigration matters, albeit in the context of an alien detained pursuant to an order of deporta-

tion, rather than exclusion. In *Daneshvar* the court upheld habeas corpus review of the Attorney General's "denial of discretionary relief where deportability itself is not in issue." *Id.* at 1251.

1328 (11th Cir.1982).[9] Therefore, the government's concern simply presents no *jurisdictional* question.

Other flaws also plague the government's argument. As a result of the previously discussed 1961 amendment to Title 8—which the government conspicuously fails to address in its brief—aliens are expressly limited to habeas corpus proceedings to challenge their exclusion orders:

> § 1105a. Judicial review of orders of deportation and exclusion
>
> . . . .
>
> (b) Limitation of certain aliens to habeas corpus proceedings.
>
> Notwithstanding the provision of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of [8 U.S.C. § 1226] or comparable provisions of any prior Act may obtain judicial review of such order *by habeas corpus proceedings and not otherwise.*

8 U.S.C. § 1105a(b) (emphasis added). The amendment thus precluded the use of declaratory judgment actions or other procedural means for obtaining judicial review of exclusion orders. Although 8 U.S.C. § 1329 grants jurisdiction to district courts of all causes arising under Title II of the Act, 8 U.S.C. §§ 1151–1362, it fails to specify any procedure to be used to obtain judicial review. Thus, if section 1329 somehow "preempts" habeas corpus jurisdiction, it would appear to eliminate the *sole* means of judicial review that the Act affords excludable aliens in parole decisions and, in effect, would render itself meaningless. The government has not suggested any alternative means by which judicial review could occur if habeas jurisdiction were displaced.[10]

In addition, the government's position is not aided by its reliance on cases that have considered how section 1329 might circumscribe a district court's jurisdiction. *Chen Chaun-Fa v. Kiley*, 459 F.Supp. 762 (S.D.N.Y.1978), and *Martinez v. Bell*, 468 F.Supp. 719 (S.D.N.Y.1979), concerned claims that fell *outside* the scope of section 1329's grant of jurisdiction—that is, claims *not* arising under 8 U.S.C. §§ 1151–1362. Those cases rejected the use of 28 U.S.C. § 1331 as a jurisdictional basis when jurisdiction could not *also* be predicated on 8 U.S.C. § 1329. In the instant case, however, the government concedes that petitioner's claim to parole under 8 U.S.C. § 1182(d)(5) falls *within* the scope of section 1329. Thus, no preemption or preclusion of jurisdiction issue arises. As recognized in *Martinez*, 468 F.Supp. at 726 n. 6, a separate, independent jurisdictional basis may exist concurrently

---

**9.** The court in *Garcia* reiterated this holding in its denial of rehearing: "However unlikely it is that [petitioner]'s argument is correct, he is entitled to raise it. The district court has subject matter jurisdiction over the argument and should resolve it." 680 F.2d at 1328 (holding that 8 U.S.C. § 1323(d)'s limitations on the substantive rights of stowaways did not deprive the court of subject matter jurisdiction to conduct habeas review.)

Other courts have also rejected attempts to confuse jurisdictional questions with questions concerning the merits of a petitioner's request for relief. *See, e.g., Yiu Sing Chun v. Sava*, 550 F.Supp. 90, 93 (E.D.N.Y.1982), *rev'd on other grounds*, 708 F.2d 869 (2d Cir.1983); *Vigile v. Sava*, 535 F.Supp. 1002, 1005–06 (S.D.N.Y.), *rev'd on other grounds sub nom. Bertrand v. Sava*, 684 F.2d 204 (2d Cir.1982); *see also Fogel v. Chestnutt*, 668 F.2d 100, 105–07 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) (discussing the tendency to confuse jurisdictional and pleading requirements).

**10.** This absence of any procedural means (other than habeas corpus) to obtain the judicial review authorized by section 1329 also undercuts the government's reliance on *Brown v. General Services Administration*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), and *Block v. North Dakota* ex rel. *Board of University and School Lands*, 461 U.S. 273, 280–85, 103 S.Ct. 1811, 1816–19, 75 L.Ed.2d 840 (1983). *Block* quoted the following statement from *Brown*: "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough *remedial scheme* to be circumvented through artful pleading." *Brown*, 425 U.S. at 833, 96 S.Ct. at 1968 (emphasis added). In the instant case, habeas corpus is the only "remedial scheme" intended by Congress to provide for judicial review of such decisions.

with section 1329, at least so long as all the claims arise under 8 U.S.C. §§ 1151–1362.[11]

■ Moreover, the Court finds no "conflict" between the Immigration and Nationality Act and the CJA provision allowing discretionary appointment of counsel in a habeas action. Section 1105a(b) of Title 8 specifically authorizes habeas corpus proceedings for excludable aliens, but nowhere does the INA address, either by authorization or restriction, the alien's use of counsel in those proceedings. The only mention in Title 8 of an alien's use of counsel at all is section 1362's grant of the "right to counsel," "at no expense to the government," in certain *administrative* proceedings. Since a habeas action is not an administrative proceeding, section 1362 on its face presents no conflict with the CJA provision allowing discretionary appointment of counsel in habeas cases.

The Court has searched in vain for some legislative "policy" in the INA that might conflict with appointment of counsel under 18 U.S.C. § 3006A(g). Certain policy concerns are apparent from the language of the statute itself. Section 1362, which is styled "Right to Counsel," is an affirmative grant to *all* aliens of the right to counsel in exclusion or deportation proceedings, but at no expense to the government. Congress's extension of the right to counsel to *all* aliens in these administrative proceedings reflects what Congress apparently regarded as a significant policy interest: the importance of representation by an attorney. The limiting provision "at no expense to the government" was likely considered a fiscally prudent restriction, given that Congress was providing that *all* aliens shall have the right to counsel in these administrative proceedings. The CJA's appointment of counsel provisions are in accord: they avoid extending the right to counsel at government expense to *all* habeas petitioners. No conflict exists simply because the CJA goes on to add flexibility to this general rule by authorizing "discretionary" appointment of counsel in habeas actions. The Court, therefore, finds no conflict between the INA and the CJA's appointment of counsel provisions.

## II.

The government's second argument is that the CJA "does not permit the appointment of counsel at taxpayers' expense for excludable aliens who are challenging their civil detention." Government's Brief at 14. In essence, the government urges that 18 U.S.C. § 3006A(g) should be construed to authorize discretionary appointment of counsel for habeas petitioners only if they are seeking *post-conviction* relief. The government relies on statements contained in the report of the House Judiciary Committee, *reprinted in* 1970 *U.S.Code Cong. & Ad.News* 3982, which addressed the 1970 amendment to the CJA that authorized discretionary appointment of counsel.

■ Addressing this argument, the Court's "inquiry begins with the language of the statute. In the absence of a clearly expressed contrary legislative intention, the plain language of the statute controls its construction." *Frank Diehl Farms v. Secretary of Labor,* 696 F.2d 1325, 1331 (11th Cir.1983). The relevant language of 18 U.S.C. § 3006A(g) is set forth below:

> Any person ... seeking relief under section 2241 ... of title 28 may be furnished representation ... whenever the court determines that the interests of justice so require and such person is financially unable to obtain representation. Payment for such representation may be as provided in subsections (d) and (e).

■ These habeas petitioners fall within the "plain language" of this subsection. The breadth of the term "any person" demonstrates that the statute was meant to apply to everyone, without exception. These petitioners are "seeking relief under

---

11. Noting that leading commentators have described *Chen Chaun-Fa* as a "dubious holding that review of asylum claim denial [is] not authorized by Sec. [1239]," 2 C. Gordon & H. Rosenfield, *supra,* § 8.8 n. 18, the Court express-

es no approval of its holding. The Court only points out that, even under that case's restrictive reading of section 1329, jurisdiction in the instant case would be proper under both section 1329 and 28 U.S.C. § 2241.

section 2241," as the preceding discussion has demonstrated. Thus, according to the plain meaning of the statute, petitioners may be considered eligible for discretionary appointment of counsel under subsection 3006A(g).

■ To negate the plain language of the statute, the legislative history must show a "clearly expressed contrary legislative intention." *Frank Diehl Farms*, 696 F.2d at 1331. None exists here. According to the government, the legislative history shows that Congress's reference to section 2241 was intended to benefit *only* "federal prisoners convicted in federal courts." Government's Brief at 15. The legislative history does indicate that the major concern of the 1970 amendment to section 3006A was the representation of criminal defendants. It does not indicate, however, that post-conviction relief for criminal defendants was Congress's sole concern. If Congress had wanted to limit subsection (g) to persons seeking post-conviction relief, it could easily have inserted in the statute the term "post-conviction" before "relief." Instead, Congress saw fit to use very broad language extending subsection (g)'s coverage to "any person … seeking relief under section 2241."

■ More to the point, however, the legislative history relied on does not even support the government's proposed construction. That paragraph provides as follows:

Finally, section 1(g) provides for compensation of counsel appointed for persons seeking collateral relief under sections 2241, 2254, or 2255 of title 28, or section 4245 of title 18, where the interests of justice so require and the person is financially unable to obtain representation. Section 2241 of title 28 provides for habeas corpus for Federal prisoners convicted in Federal courts and section 2254 provides for habeas corpus for State prisoners convicted in State courts. Motions to vacate Federal sentences are allowed under section 2255 of that title and section 4245 of title 18 provides for a post-conviction hearing when there is probable cause to believe a person was mentally incompetent at the time of trial and the issue was not raised during the trial; 18 U.S.C. 4244, which provides for an ancillary motion on the issue of competency to stand trial, is not specifically mentioned in this subsection because it would be covered under section 1(c) as an "ancillary matter related to the (trial) proceeding."

H.R.Rep. No. 91–1546, *reprinted in* 1970 *U.S.Code Cong. & Ad.News* 3982, 3992–93. The first sentence of the above paragraph describes what the statute provides for: "compensation of counsel appointed for persons seeking collateral relief under sections 2241, 2254, or 2255 of title 28, or section 4245 of title 18." Petitioners here fall within that definition. The government attempts to rely instead on the next sentence's terse and incomplete description of section 2241. Habeas relief under section 2241 is not limited to post-conviction relief, and it is unreasonable to assume that Congress in 1970 was unaware of section 2241's functions in other contexts, such as in the immigration field, in cases challenging civil commitment to mental institutions, and in other areas. *See* R. Sokol, *Federal Habeas Corpus* 20 (2d ed. 1969) (discussing various contexts in which habeas corpus applies). This misleading description of section 2241 appears to have been nothing more than an oversight or a shorthand reference to identify that statute. Accordingly, it can no way be regarded as the "clearly expressed contrary legislative intention" necessary to negate the statute's plain language.

■ The other portion of the legislative history [12] relied on by the government can,

---

12. That portion of the House report provides as follows:

Section 1(a)(3) requires that each plan provide for the appointment of counsel, pursuant to the provisions of section 1(g), for individuals financially unable to secure adequate representation who are subject to revocation of parole, who are material witnesses in custody, or who are seeking collateral relief. Inasmuch as these proceedings have traditionally been regarded as technically civil in nature rather than criminal, no right to appointed

in fact, be read to support the application of subsection (g) here. Petitioners, like most of the Cubans detained at the Atlanta Penitentiary, are there because of alleged past criminal conduct. Their detention is "technically civil in nature, rather than criminal. . . . The distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved." H.R.Rep. No. 91–1546, *reprinted in* 1970 *U.S.Code Cong. & Ad.News* 3987–88. In short, neither these passages nor anything else in the legislative history demonstrates the "clearly expressed contrary legislative intention" required to override the statute's plain language.

■ Finally, the Court dismisses the government's strident assertion that Congress could not have intended to make appointment of counsel available to every detained alien who files a habeas petition. The appointment of counsel under subsection (g) is not a matter of right, but one of the court's discretion, guided by the criteria within the statute. It is entirely reasonable to conclude that Congress created this flexible provision to be applied in unforeseeable circumstances that tax the abilities of our government to do justice, such as the circumstances presented by the Mariel boatlift.

### III.

■ The government's third argument is that the Court abused its discretion by authorizing appointment of counsel without individualized review. According to the government, "It is apparent that the Court did not, in issuing approximately 1200 orders the same day, individually weigh the merits of each case." Government's Brief at 18. Although only these three "test cases" are now properly before the Court, the government is nonetheless mistaken in its characterization of the Court's handling of the large group of petitions. In January 1985 the Court and its staff did review the mass of petitions and closely checked each petitioner's stated financial status before allowing the petitions to be filed *in forma pauperis.* At that time the Court also determined that the petitions, including these three now before the Court, stated causes of action and that they would survive motions to dismiss, especially in light of the lenient standards of pleading applied to *pro se* petitions. Moreover, at this stage of the proceedings, any further inquiry into the "merits" of these three cases is impossible, given that the Court has no access to the relevant administrative records.[13]

■ Thus, the Court concludes that counsel may properly be appointed under 18 U.S.C. § 3006A(g) to represent petitioners in these habeas actions, provided the Court determines that (1) petitioners are financially unable to obtain representation and (2) the interests of justice so require. The affidavits submitted by petitioners indicate that petitioners Perez-Perez and Machado-Matos have no funds in any bank accounts or in their prison accounts. Although petitioner Crespo-Gomez's affidavit does not state specifically whether he has any funds in any account, it does indicate that he is indigent and that he has received

---

counsel has as yet been recognized under the sixth amendment. The distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved. See *In re Gault,* 87 S.Ct. 1428, 387 U.S. 1, 18 L.Ed.2d 527 (1967), and *Johnson v. Avery,* 89 S.Ct. 747, 393 U.S. 483, 21 L.Ed.2d 718 (1969). The proceedings listed in subsection 1(a)(3) and (1)(g) are intimately related to the criminal process. Counsel has often been appointed to represent persons in such proceedings, but compensation has not been available under the 1964 act. The committee believes that compensation should be available under the act whenever a judge determines that counsel

must be appointed to safeguard the interests of justice.
H.R.Rep. No. 91–1546, *reprinted in* 1970 *U.S. Code Cong. & Ad.News* 3982, 3987–88.

13. The Court rejects the government's further contention that the Court should have dismissed these cases without issuance of a show-cause order. It cannot be determined from these petitions whether petitioners are entitled to the relief sought. *See* 28 U.S.C. § 2243. That question requires inquiry into matters outside the pleadings, particularly the petitioners' administrative records.

no income from any source within the past twelve months. Consequently, the Court has concluded that these three petitioners are financially unable to obtain representation.

■ Turning to the other requirement of 18 U.S.C. § 3006A(g), the court concludes that the interests of justice strongly dictate that counsel be appointed in these actions. Two overriding considerations guiding appointment of counsel in civil cases are whether counsel is needed to enable a litigant to present his case adequately and whether appointment of counsel would benefit the Court and the parties. *See Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir.1980). Even under ordinary circumstances, petitioners' lack of command of the English language and their unfamiliarity with the American legal system would hinder the adequate presentation of their cases. The circumstances surrounding these cases, however, are exceptional. Because of the government's concern for security, petitioners are denied access to their own administrative records, which provide the basis for the very decision that they are challenging.[14] The complexity of the issues presented in this area of the law would tax even trained legal minds. Further, the lockdown at the Penitentiary appears to bar petitioners from access to law books and perhaps even to their own legal materials, further weakening their abilities to present their cases. The assistance of counsel in presenting petitioners' cases would benefit not only petitioners themselves, but also the Court and even the government by eliminating the extraneous issues and developing the relevant ones.

■ Consequently, appointment of counsel here serves the "interests of justice." The Court has considered whether appointment of *pro bono* counsel under 28 U.S.C. § 1915(d) might sufficiently promote these interests, but has concluded that it would not. One major stumbling block is that interpreters must be used for the attorneys to communicate with their clients. Under 18 U.S.C. § 3006A(g), but not under 28 U.S.C. § 1915(d), the attorneys may obtain payment for the services of these interpreters. If counsel are not appointed under section 3006A(g), they would face the Hobson's choice of not communicating with their clients or of paying for interpreters out of their own pockets.[15] Given this choice, many attorneys understandably might decline to volunteer their services.

A second major obstacle to appointment of counsel under 28 U.S.C. § 1915(d) instead of under 18 U.S.C. § 3006A(g) is that, for financial reasons, each attorney likely would be able to accept appointment in only one or two cases. Although a sufficient number of *pro bono* attorneys could be found to represent just these three petitioners, it would be difficult if not impossible to obtain a sufficient number of *pro bono* lawyers to handle the approximately 1000 similar cases now pending, not to mention any habeas actions filed by the other 800 detainees at the Atlanta Penitentiary who might be eligible to do so. Further, the use of fewer attorneys, each handling fifteen or twenty cases, would result in certain economies of scale because of the common legal issues in these actions. Finally, appointment under section 3006A(g), by limiting the number of different attor-

14. In fact, in conferences with the Court, counsel for the government have insisted that protective orders will be necessary to prevent appointed counsel from disclosing to the detainees themselves certain items in their administrative records that might supply the reasons for their detention. Denial of counsel in these instances would prevent those detainees from discovering—and thus being able to challenge—the specific grounds for their confinement.

15. The Court has considered whether volunteer, uncertified interpreters would suffice, but has

concluded that they would not. In the course of handling cases involving Mariel Cubans, the Court has learned that these detainees speak in language not always understandable by someone with only a knowledge of ordinary Spanish. The Court recalls one detainee who was characterized as a child molester because of a translation error, when in fact his only crime was indoctrinating his children against communism. Thus, the Court has concluded that only specially trained, certified court interpreters can adequately perform this task.

neys involved, would avoid the practical problems inherent in unleashing—all at once—500 or more different lawyers on the Court system and on respondents.

The government would have the Court believe that appointment of counsel under 18 U.S.C. § 3006A(g) would drain the United States Treasury and would necessitate appointment of counsel at government expense for each of the more than 150,000 aliens detained annually. Setting aside for a moment considerations of justice, the modest payments authorized under 18 U.S.C. § 3006A are a pittance when compared with the cost of detaining each of the petitioners annually.[16] Further, no alien would have a *right* to counsel at government expense. These appointments are an exercise of the discretion that Congress vested in federal courts to promote the "interests of justice" and of the flexibility that Congress wove into 18 U.S.C. 3006A(g) to meet the unforeseeable demands of unusual cases, such as those arising from the Mariel boatlift.

In sum, the Court concludes that the appointment and compensation of counsel for these petitioners under 18 U.S.C. § 3006A(g) is proper. A different result would eviscerate petitioners' statutory right to seek habeas corpus relief—the only "remedial scheme" available to excludable aliens under Title 8, and one which Congress so "carefully preserved" for them in the 1961 amendment to Title 8. *See* 8 U.S.C. § 1105a(b); H.R.Rep. No. 1086, *reprinted in* 1967 *U.S. Code Cong. & Ad. News* 2972; *see also Brown v. General Services Administration,* 425 U.S. at 833, 96 S.Ct. at 1968 ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented....").

Next, the Court considers the government's motion to certify this order for interlocutory appeal under 28 U.S.C. § 1292(b). First, it appears that this order appointing counsel is not appealable under sections 1291 or 1292(a) of Title 28. Second, the Court finds that the applicability of 18 U.S.C. § 3006A(g) to these actions is a "controlling question of law" because, without appointment of counsel under that provision, petitioners could not adequately present their cases. Third, in view of the absence of any authority addressing this question, the Court concludes that there is "substantial ground for difference of opinion."[17] Last, the Court finds that "an immediate appeal from the order may materially advance the ultimate termination of the litigation" because, as discussed above, without the assistance of counsel appointed and compensated under 18 U.S.C. § 3006A(g), petitioners would be more likely to lose at the summary judgment stage of this litigation for failing to develop the facts essential to prevail.

Accordingly, the Court GRANTS petitioners' motions for appointment of counsel and, pursuant to 18 U.S.C. § 3006A(g), APPOINTS counsel in each case as follows:

| | |
|---|---|
| C85–221A | William C. Thompson |
| C85–834A | Jay Solomon |
| C85–1338A | David Webster |

In addition, the Court GRANTS the government's motion to certify this order for interlocutory appeal under 28 U.S.C. § 1292(b), for resolution of the following "controlling question of law":

Whether counsel may be appointed and compensated pursuant to 18 U.S.C. § 3006A(g) in a habeas corpus action brought by an excludable alien challenging the Attorney General's refusal to parole him.

---

**16.** The Court also has been informed that the budget for CJA payments for fiscal year 1986 contains sufficient funds to cover payments for appointed counsel, interpreters, and other costs in the large number of Cuban habeas actions.

**17.** Moreover, because of the novelty of this issue, appointed counsel should not be forced to litigate these actions until final judgment while faced with the possibility that they ultimately would have to disgorge any payments received under the CJA.

Finally, the Court GRANTS respondents' motion for a stay pending appeal in these three actions.